Case number 23-5251, Ammar Al-Baluchi, also known as Ali Abdul Aziz Ali, appellants versus Lloyd J. Austin III, Secretary of Defense et al. Ms. Pradhan for the appellant, Mr. Schultz for the appellees. Morning. Good morning, your honors. I may please the court. My name is Alka Pradhan. I'm here to represent Ammar Al-Baluchi, case of Al-Baluchi v. Austin. Your voice is very quiet. Help if you speak up a little bit. Of course. Is that a little bit better?  Okay. Thank you. Of course. Mr. Al-Baluchi is a torture victim who's been detained at Guantanamo Bay since 2006. His brain is damaged and he suffers from a progressing spinal tumor among other complex conditions. Regarding the central questions in this case, we're asking the court to find that the Secretary of the Army does not have the authority to unilaterally change a multi-service regulation like AR-190-8. And we ask the court to reconfirm the AR-190-8 from its plain language and from nearly every interpretation of the regulation by both the government and by courts supports Mr. Al-Baluchi's right to a mixed medical commission under the regulation. Beginning with the Secretary of the Army's memo, with regards specifically to- Can I begin with jurisdiction? Certainly. In question here. Certainly, Your Honor. So the issue of jurisdiction is, what we're saying is that the denial of the mixed medical commission by the district court had the practical effect of denying an injunctive relief because of the irreparable harm to Mr. Al-Baluchi that can only be effectively challenged by immediate appeal under 1292A1. What exactly is the irreparable harm that would be remedied if we heard your appeal and ruled for you? Sure. So this case essentially inverts this court's denial of the government's appeal in the Khatani case in September, 2020. And there are several factors contributing to irreparable harm here. The first I recall in Boumedi in the Supreme Court saying that the cost of delay can no longer be borne by those who are held in custody. And that is the case for Mr. Al-Baluchi here. He has been in custody without trial for nearly 22 years. He has serious documented medical conditions that are contained in four expert reports that we've submitted and in the DOD medical records that we've submitted. And those are in Joint Appendix 183 to 223 and 293 to 324. And set different from the Khatani case, Mr. Al-Baluchi has had his habeas proceedings suspended at the district court since 2019, pending a final outcome from his military commission proceedings at Guantanamo Bay. And so this particular issue of the mixed medical commission, this is a final order on the mixed medical commission issue as opposed to his habeas writ large. And there is no opportunity for this particular finding by the district court to be reviewed until the end, potentially the end. It just seems like to get jurisdiction in the district court, you have to say you're not seeking an injunction because you don't have jurisdiction in the district court for injunctive relief. And then you turn around here to get us to give you grant jurisdiction of an interlocutory or collateral order. You say, well, this is really just like an injunction. Well, Your Honor, there's a little bit more nuance than that. And we believe the government in their brief took our statement at the district court a little bit out of context. We argued below that we weren't seeking injunctive release in the habeas case itself, because the government was arguing that the request for a mixed medical commission was functioning as a request for a permanent injunction on his habeas case writ large. The request for a mixed medical commission is different. It seeks immediate specific action under the army regulation and regardless of labels, the practical effect test, which is what we're relying on here for jurisdiction, focuses on substance. Denying the mixed medical commission had the same effect as denying injunctive relief. And it foreclosed medical evaluation. It caused irreparable harm in the manner that I've just described. And I'm happy to talk about that in more detail. But I guess just to get down to brass tacks, I'm very much kind of like a realist. Yes, sir. The mixed medical commission does not, those doctors aren't treating your client. So to the extent that there's any damage or injury or treatment that he's not receiving, they're not going to give that to him. So what is the, how is he, make it plain for me, how he is irreparably harmed if he does not get this mixed medical commission review right now, as opposed to after the proceedings have completed? Sure, I have two points for that, Judge Wilkins. Speaking practically, although the United States itself has not convened mixed medical commissions previously, mixed medical commissions are a, something that have been convened under international law in several different armed conflicts. And the practical reality of a mixed medical commission is that because they are convened by three physicians, those physicians can, there are actually three possible outcomes of a mixed medical commission. The first is that they can decide that the status quo is fine, this person is fit to remain detained, no notes. The second is that they can find that the person is currently fit to remain detained, but that they may have, as Mr. Ravlucci does, serious medical conditions that require perhaps some adjustments or require some treatment. And third, they can order release. And that is the way in which medical commissions have in fact functioned when convened by the RCRC. So that's the first note, is that yes, they are not directly treating Mr. Ravlucci, but the findings of the mixed medical commission do bind the US government under AR- They can't order release. They can't, under the army regulation, they can't, mixed medical commission can't say, let him out of Guantanamo today. And the army has to let him out of Guantanamo today. Well, first of all, it would be the joint task force at Guantanamo that would ultimately, that is ultimately in charge of detaining him, not the army per se. But with regards to the provisions of AR-190-8, the findings of the mixed medical commission, if they were to order the release of Mr. Ravlucci, they can in fact order that he is no longer fit to remain detained. And that finding does bind the government to carry out his release within three months. I believe the government points out, at least in article 115 of the convention, it says, seems to say, no, actually it is only binding, you know, it's required to be carried out once the military commission proceedings conclude. And that's the one issue I'd love to hear your response to. Certainly, your honor. And, you know, the government includes this as sort of a non-legal non sequitur. It is actually, I hesitate to say this, but it is actually patently untrue that that is what article 115.1 says. The government cites article 115.1 and then cites the ICRC commentary on that article. And the ICRC commentary makes clear the very opposite, and that's at page 4398 to 4399 of the ICRC commentary. I'd be happy to submit it in a 28-day letter. It says, and I quote- Is that in the supplement or no? It is not, your honor. What is the page site? Page site is 4398 to 4399 of the ICRC commentaries, specifically on article 115.1. And it says, and I quote, article 115.1 does not permit wounded and sick prisoners to be kept back on the plea that they are undergoing disciplinary punishment. They must also be examined by a mixed medical commission if they are so entitled, and the detaining power must carry out the MMC decision within three months, even if entire disciplinary punishment cannot be executed. So the Geneva Conventions make very clear the prioritization of medical care of detainees over prosecution and, in fact, serving of sentences. And this is in keeping with the overall point of the Geneva Conventions, which is to ensure the safety and security of detainees, of all detainees under international law. The commentary that I'm looking at says it's article 115.4402, 02, the repatriation or accommodation in a neutral country convicted and detained prisoners of war who are wounded or sick is conditioned on the consent of the detaining power. Accordingly, the detaining power may keep the prisoner of war detained for the duration of the judicial proceedings or until they have served their sentences. That not applicable? No, Your Honor, and I think, well, it's not that it's not applicable. It's that when you put it against the commentary on article 115, it makes clear that the prioritization is for medical care. So yes, generally, of course, the detaining power can make a decision with regards to the wounded and sick and how sick they are. But once they are seen by a mixed medical commission, and if a mixed medical commission recommends release, it is not up to the detaining power to determine how long to hold them. Well, it talks about, I guess I'm, it's talking about the repatriation of people who are wounded or sick and saying that it's conditioned on the consent of the detaining power. And you're saying that's not referring to someone who's wounded or sick and been held to be eligible for repatriation by a mixed medical commission? So again, I don't think that these two, I don't think that these two provisions are necessarily intention, but I think that when there is a tipping point when, and what this says specifically is, yes, the detaining power has discretion as to when the wounded and sick can be repatriated, but there's a tipping point. And that's what the commentary in article 115.1 refers to, which is it does not permit those detainees or those prisoners to be kept back just because they're undergoing disciplinary punishment or undergoing prosecution. And then with regards to the mixed medical commission provision, it specifically prohibits the detaining power to allow them to continue to serve their sentence. So are you referring to commentary on article 115.1? Yes. And I think the government is referring to the commentary in article 115.2, which is, 115.1 is about disciplinary punishment and 115.2 is about treatment in connection with a judicial prosecution. So isn't this more a judicial prosecution than disciplinary punishment? Well, at the moment, it's, we're not really sure what it is, to be perfectly honest, because Mr. Albulucci, again, is being held without trial for nearly 22 years. So there is a judicial process ongoing, but the overall point really is that the Geneva Convention specifically contemplate a tension, a possible tension between the need for medical care and the need for repatriation and a continued judicial proceeding or a continued serving of sentence and prioritizes the need for medical care. Are you talking about under 115.2 that it's prioritized the need for repatriation? Because it seems to me explicitly to say that they could be repatriated only if the detaining power consents. And then the commentary says that it's the prerogative of the detaining power to keep a prisoner of war detained for the duration. Yes, Your Honor. But the fact that included in the commentary on Article 115.1 is the specific provision for a mixed medical commission to examine these prisoners despite any ongoing- Disciplinary proceeding. Disciplinary proceeding, but despite that, specifically contemplates the possibility that medical care may have to circumvent any prosecution or judicial proceedings regarding these detainees. So what is the practical effect of injunction? What is the irreparable harm that an order to convene a mixed military commission would redress? So Mr. Alpaglucci seeks an independent evaluation of his medical conditions by the government. And the key is that this provision, section 312 of AR190-8 is binding on the government. He has had an number of independent experts examine him and the court has those, excuse me, sorry, the court has those reports in front of it indicating that he has serious medical conditions. And those are bolstered by the DOD medical records. But the point is, none of those are actually binding in terms of what the government has to do about it. So section 312 provides that sort of binding procedure by which he can get an evaluation that says, yes, he's fit to stay detained. Yes, he's fit to stay detained, but requires this sort of treatment, which is the way in which mixed medical commissions have been carried out in the past. Or actually he's not fit to continue treatment. He's got a spinal tumor that may require surgery and he needs to be repatriated or sent somewhere where he can get that care. So assuming that we agreed with you that there's jurisdiction here, in terms of the relief, I gather that the argument is really the crux of it is under Army Regulation 190-8. And I guess my question is, are you arguing that your client is entitled to a mixed military commission under the Geneva Convention itself, or under AR-190-8? It's under AR-190-8. And the argument is that it's by its plain language and also, and this is the part that requires some history, by the government's own application of AR-190-8. So for example, the detention memorandum that was filed in 2009, that the government initially filed in Mr. Al-Baluchi's habeas case, which I apologize is not part of the record and I'm happy to submit it, states explicitly that principles derived from international armed conflict must inform the interpretation of detention authority over the current conflict. So you have the government arguing in 2009 that in fact, we have to import principles of international armed conflict to this new conflict against a non-state actor, against Al-Qaeda and associated forces. Following that memo and echoing the government's- Why is what you just said in any tension with the government's position that he's entitled to Article III type minimum protections, but not the elevated protections of prisoner of war status? Because Judge Garcia, following that memo and in accordance with the government's previously stated position in the Hamdi case in 2004, the government argued for the application of Article V status determinations via implementation of AR-190-8 to Guantanamo detainees in the Abihani case for this court and in their opposition to cert before the Supreme Court in the Al-Warafi case. This court agreed in armor that AR-190-8, that AR-190-8 was the applicable domestic law to Guantanamo Bay. And so it is our position that Mr. Al-Baluchi is- The government's position is that Mr. Al-Baluchi is an alien, unprivileged enemy belligerent. And it is the longstanding position of courts and the government that the designation or title of AUEB or enemy combatant, as Judge Collier reasoned in the Katani case, does not strip Mr. Al-Baluchi or any Guantanamo detainees of the categorization of other detainee, which very plainly on its face applies to them, of AR-190-8. Other detainees are entitled to the provisions available to enemy prisoners of war under that regulation. Well, Judge Collier so held in Katani reading this rule, but you have not referred us to anywhere where the government took that position. The government, excuse me, the government's position is that Article V status determinations as implemented in AR-190-8 are applicable and have been applicable to Guantanamo detainees. And so for example, in the Al-Bihani case, they specifically quoted AR-190-8 and said Article V status determinations and footnote AR-190-8 for that. And that is in keeping again with their view that principles of international armed conflict must be applicable. I'm not sure that I'm meshing this with what I read in your briefs. I thought you were arguing that AR-190-8 entitles your client to a mixed military commission because in your view, he qualifies as an other detainee, not because he qualifies as a UEB or that a UEB is necessarily treated as equivalent to an enemy prisoner of war. Is that right? That's correct, Your Honor. And I apologize if I've not been clear enough. So following Judge Collier's reasoning in Katani, in Katani was a little bit different. He was categorized as an enemy combatant. That was his title. The reasoning, however, is exactly the same in that both enemy combatants and AUEB fall outside of the categorizations in AR-190-8. So in the glossary of AR-190-8, the category of other detainee is applied to anyone who does not fall in the other three categories, specifically delineated in AR-190-8. And so- Can I ask, are you disputing that the character of the conflict pursuant to which Mr. Albulucci was detained is non-international? No, not at all. You are accepting that it is from a non-international conflict? We accept that it's a non-international armed conflict. The other source that, but however, just to follow the reasoning as to why Mr. Albulucci falls under AR-190-8, because the category of AUEB is an other detainee, falls into that catch-all under the glossary of AR-190-8, other detainees are specifically under section 1-6 of AR-190-8 afforded the same rights that are given to enemy prisoners of war. I'm sorry to stop you, but I thought I just heard you say that the glossary defines AUEB as an other detainee. No, Your Honor. No, it doesn't. No, it doesn't, no. It just says that the other detainee, and that, I understand that to be, so assuming that we treat the regulation as applying to non-international armed conflicts, it by its terms is restricted to certain EPWs and RPs, and your argument is that your client should provisionally be treated as an enemy prisoner of war, right? You're not arguing that he's a retained personnel or a civilian internee. No, Your Honor. Or even an enemy prisoner of war, but that he should be treated provisionally as an enemy prisoner of war pending any status determination. That's correct, and the reason for that, again, is going back to the government's own argument that Article V status determinations that are normally found in international armed conflict are and have been long applicable to Guantanamo Bay detainees, and the bookend- But so if somebody were a retained personnel, they were a medic, and they were Guantanamo, that would assist them. But here there's no claim that your client is a medic, for example, or a cleric. No, Your Honor. So if it were determined, and I understand that you have some questions about the authority behind the determination, but if it had been determined that your client's status is unprivileged enemy belligerent, that's the end of your argument, right? Because if he's so determined, that is in contradistinction to an enemy prisoner of war, and unprivileged enemy belligerent is someone who is not fighting on behalf of a nation state and the other requirements of insignia and whatever. So the provisional grant of enemy prisoner of war status would no longer be applicable because it would be clear that he's not an enemy prisoner of war. No, Your Honor, for a couple of reasons. This court in AMR II found that the mere designation of enemy combatant, which is another designation that falls outside of AR 190-8, does not render AR 190-8 inapplicable. Again, for the purpose of application of deregulation to Guantanamo detainees. And then Judge Collier followed that reasoning. We believe that Judge Collier got it right in saying that, look, enemy combatancy or AUEB or any other designation that falls outside of AR 190-8. And I will quote Judge Collier, she said, he remains an other detainee because the descriptor is not found in AR 190-8. He remains another detainee for the purposes of the regulation is by its terms entitled to rights available to EPWs, including the MMC. Now, I just want to note that this determination about status turns on the application of Article V of the Geneva Conventions, which are generally available during international armed conflict. And so taking the government's statement in their memo of 2009, that principles of IACs must be applicable to Guantanamo and the 2023 version of the DoD law form manual, which the government states is the DoD's authoritative statement on the law of war. That manual states at section 427-4 that Article V status determinations, while usually applicable in international armed conflicts, have been used by the Department of Defense and are used by the Department of Defense in additional situations. And they list a number of situations and specifically list Guantanamo Bay. And so you have, and this July 2023 law form manual postdates the Secretary of the Army's memo. And so you sort of have these parallel tracks where you have one government agent issuing this unilateral memo in January, 2021, saying very suddenly, and contrary to all previous briefing by the government and court statements, that now AR190-8 does not apply to non-international armed conflicts where their DoD law form manual says the opposite and their previous detention memorandums have even argued the opposite. So your argument is that the applicability of AR190-8 to Guantanamo means that it doesn't matter whether there's a status determination that's in contradistinction to enemy prisoner of war, because as a policy matter, the government has chosen to treat a UEB, unprivileged enemy belligerent, as if he were an enemy prisoner of war? Well, that is part of it, Your Honor. That is your, you have to prevail on that to prevail in your case. No, we believe that the plain language of AR190-8 is not applicable only to international armed conflict and that the category of other detainee is specifically included there to catch these, any other determinations, right? And that's in keeping with the spirit of the Geneva Convention. So the government can name Mr. Albulucci an enemy combatant, they can name him an AUEB, they can name him something else. We know that that designation has changed over time as well as the government's legal position on these detainees has changed over time. But the fact of the matter is they cannot write him or other detainees out of the applicability of AR190-8. This court should not allow the government to use Article V status determinations when convenient to them to justify the holding of these detainees at Guantanamo Bay indefinitely, but then claim that it doesn't apply when it is inconvenient to them, when they then find a right to which they are entitled under AR190-8. So putting aside the, it seems like your strong argument in your view is the government's past positions. And I appreciate that. If we set that aside, just based on the text of 198, is there anything you would point to as showing that it's actually a departure from this distinction between non-international and international armed conflict? Certainly, Your Honor. AR190-8 in its front matter states that it applies to armed conflicts and all military operations other than war. Which doesn't exactly speak to international versus non-international. It could be speaking to military operations short of war. Yes, but it would lead to a legal absurdity and it would be not in keeping with the Geneva Conventions. Frankly, if the regulation that governs detention, all detention operations by the United States applies only to international armed conflict and then only to military operations and perhaps what we call in international law security situations that do not rise to the level of armed conflict. It really leaves a very, very large gap there that is not supported by the text of AR190-8. And again, as Judd Collier pointed out, the government points to no specific language in the regulation that supports their reading that it has to be limited to international armed conflict because in fact, if you read the entirety of the regulation, it is written in very broad terms indeed and has been taken by the government because of that plain language to apply to all manner of armed conflicts and outside of armed conflict where the military is engaged. I did just want... As I read the government's position, it quite clearly says that an unprivileged enemy belligerent is not entitled to any of the distinct privileges of an enemy prisoner of war. Yes, and this is where we see the contrast between the government's use of Article V status determinations derived from international armed conflict to be able to say, look, this is how we're using these status determinations in order to find some designation that is outside of a category that we've ever used before. But then they say, no one else, you can't use these Article V status determinations to obtain rights to which you would normally be entitled under AR-190-8, given that you fall into the catch-all category of other detainees. Can I ask, the government relies on the president's 2002 determination. Can you just explain your response to why that's... Certainly, and it's very briefly. The president himself is not the proper... No one is impugning the authority of the president of the United States, obviously. But the Geneva Conventions are very specific on what constitutes a competent tribunal for the purpose of these status determinations. And it is not a determination by the president of the United States, which is inherently political. It is- There might be other problems with it, but you're relying on the regulation. And the regulation refers to competent authority, not a competent tribunal. So I'm not sure that distinction is sufficient. But again, it's been the position of the government since Guantanamo Bay opened, that principles of international armed conflict must inform the current conflict. And if we're going to import principles of international armed conflict, this is a pretty key place that they would be changing that principle in contravention of the actual purpose of that, which is to establish a competent tribunal that can assess the matter of status determination with some neutrality, as opposed to the president of the United States, which, you know, whoever he or she may be, is not considered an entirely neutral party. I'm reading the commentary to Article 5, saying that the task of establishing that a person is not entitled to prisoner of war status should rest with the detaining power, and that the procedural guarantees applicable to status determination proceedings are not regulated by international humanitarian law, but are a matter of domestic law or regulation. So I just don't see anything in the commentary or in the Geneva Convention itself that suggests that a determination by an entity of the detaining power, that the detaining power has authorized to make it, is not competent authority for this purpose. Well, so there is language in the commentaries, and I can find the site, Your Honor, I apologize, I don't have it in front of me, about what a competent tribunal actually is. And I believe that we briefed it in our reply brief. But even aside from that, even if we were to accept that the president is a competent authority for making this determination, that means that he is, or she is, the competent authority for making a determination that the person is an AUEB for the purpose of detention. That again, that still doesn't remove the AUEB or the enemy combatant from the protections of AR 190-8, which the government itself used to make the determination that that person should be held. If I may briefly address the memo of the Secretary of the Army. I'm happy to-  Can you? Yes, of course. So firstly, with regards specifically to Mr. Albulucci, the district courts determined in the Katani case in March of this year,   that really affirmed the longstanding position that AR 190-8 was applicable domestic law to Guantanamo detainees. Mr. Albulucci made his request under the appropriate provision of AR 190-8 in May, 2020. And the Army memo is not issued until January, 2021, purporting to overturn a judicial finding that in fact AR 190-8 was applicable domestic law. And so, as a preliminary matter, we argue that it does not apply to Mr. Albulucci at all. However, the district court reasoned that the Army secretary as the executive agent of the regulation could therefore issue policy guidance for the regulation. It is true that the Army secretary is the executive agent for the regulation, but multiple DOD directives make clear that the executive agent does not have the authority to develop, coordinate, and implement policy guidance for regulations. That power is reserved to the undersecretary of defense for policy, the officials specifically designated under the DOD directive 5101, which is not included in the government statutory addendum, to oversee the executive agent's execution or administration of the law. And this is important. It's a really important point because detention policy cannot be dictated unilaterally by even the head of a military department, the head of a single military department. Guantanamo is a joint task force detention operation. It's run on a naval base. The personnel, including the medical personnel, are from multiple services. And so the policy regarding detainees there and in any theater has to be coordinated properly through the USDP, particularly for a joint service regulation like AR 190-8 that was promulgated by the secretaries of the Army, Navy, and Air Force. And again, where we find this to be a problem is you have this memo from the secretary of the Army in January, 2021, and then you have the DOD Law of War Manual, which is the authoritative statement of the DOD on the law of war in July, 2023, saying specifically AR 190-8 is applicable at Guantanamo Bay. So this is why the coordination has to take place. And it did not take place. And so the Army memo should not be given any legal weight. All right. Well, we'll give you a limited amount of time for rebuttal and we'll hear now from Mr. Schultz. Thank you. May it please the court, Benjamin Schultz, on behalf of the government. This court can resolve the case on appellate jurisdiction for the simple reason that Mr. Albulucci does not satisfy the irreparable injury test. And more specifically, he can't show that convening a mixed medical commission would remedy some sort of irreparable injury that requires immediate review. Put simply, that is because, as both the Geneva Conventions made clear, and as the DOD instructions that bind the Army and outrank the Army regulation that he relies on, if an individual is facing a judicial prosecution, as Mr. Albulucci is before the military commissions, then any recommendation of the mixed medical commission, including one that would otherwise require repatriation, would not be able to be implemented until at least the completion of those judicial prosecutions. Could be implemented. The government could exercise a prerogative to wait, but it doesn't have to. Your Honor, you're right that the government would have the option at its discretion, just like it has the option now, even without convening the mixed medical commission to do something other than maintain the prosecution against Mr. Albulucci. Petitioner makes a persuasive argument that the mixed military commission's findings would inform the disposition of his case, could provide the impetus for Mr. Albulucci's eventual transfer. So, assuming that he, for purposes of jurisdiction, that he's entitled to the mixed military commission, isn't it fair to think that denying the relief he seeks does cause him irreparable harm? Well, Your Honor, in order to reach that conclusion, Your Honor, what essentially we have to be saying that the irreparable harm that needs remedying, that he needs immediate review now to get, is essentially some sort of advisory position from this mixed medical commission, giving their medical opinions that would not bind the government in any way. Now, if the court wants to say that this advisory commission from these three doctors saying whatever they think, and mostly it would be just saying about whether or not he's sick enough to get repatriation. I'm not really sure where she gets the additional stuff about additional treatment, because that's not in the army regulation, and that's not in the Geneva Convention itself. But even putting that aside, if this court wants to say that that advisory opinion is remedying some irreparable harm, I think that's a difficult position, but that would have to be the basis. Right, it's meant as an independent medical judgment about the condition. Your Honor, given that the test here is whether or not the district order has the practical effect of an injunction, it seems odd to think that something has the practical effect of an injunction when the only effect it has is giving some sort of advisory recommendation that nobody's bound to follow. So if the court wants to say that as a matter of its case law that meets the practical effects test, and it really is an injunction, you know, that would be something the court could say. We think that's wrong, and that's not what this court's case law seems to think. Is that the right way to think about what the injunction would be, or is it the injunction would be to convene the commission? The injunction, I mean, again, we have to put ourselves in the world where he's disclaimed seeking an injunction because he has to fit himself into the universe where what he's seeking is habeas. But we're in this universe where somehow the district court enters an order that under this court's case law counts as a habeas writ, and that is in some way requiring the government to convene a mixed medical commission. But that is all that the order would be requiring. It wouldn't be requiring the government to follow any of the recommendations of the mixed medical commission, except to the extent that if the mixed medical commission recommends repatriation, that I suppose would become binding at the conclusion of military commission proceedings, unless he's convicted, in which case it would then become binding at the conclusion of the sentence, which given that he faces a potential capital sentence, it's possible that the mixed medical commission's recommendation would never be implemented, or, you know, he could also end up with a life sentence, in which case the mixed medical commission's recommendations would never be implemented. So I'd be happy to spend more time on jurisdiction. Otherwise, I can briefly turn to the merits. And I think here there's a lot of different grounds that the court can rule on. It can do it based on the straightforward argument that AR-190-8 can't be inconsistent with the Geneva Conventions, and it's clear that in non-international armed conflicts, the only part of the Third Geneva Convention that would apply would be Article III, and it would not be the parts about the mixed medical commission. Or I think another basis that the court could go on would be the fact that in order to prevail, he has to show that he's an other detainee within the meaning of Army Regulation 190-8. And it's very clear that he is not, because to be an other detainee under 190-8, even if he otherwise would have an argument that maybe he's a prisoner of war, which he doesn't have, that provisional status would only apply until there is a determination by a competent authority. And as the court pointed out in the questioning of my opponent, there have been competent authorities that have determined that he is not entitled to prisoner of war status, and that would include the Combatant Status Review Tribunal, and that would also include the president. And either of those would be sufficient. Certainly both of those are sufficient. So again, I'd be happy to address that or any of the other issues in the case. I'm also happy to address the Army Secretary's memorandum if the court wants to talk about it. The other detainee definition is a little bit odd.  It says you're treated as an EPW until a legal status is ascertained by competent authority.  Even if the president's determinations otherwise would apply. It's not, does it assign him a status? All it says is not a prisoner of war. It's not a status determination. Well, respectfully, I think the status, at a minimum, the status determination would be from the Combatant Status Review Tribunal, which determined that he was an unprivileged enemy. I believe they use the older term, enemy combatant, which the DOD instructions say is equivalent. That is what the DOD instructions say. I think we've cited those in our brief that the two terms are interchangeable. So that is his status, and that is why he is not someone who could ever qualify for prisoner of war status. I read you to have another argument that essentially at least the bottom line was because this is in connection with a non-international armed conflict, 198 is basically irrelevant. You're right. That's another way that Your Honor could get there, that the 190-8 can't supersede the Geneva Conventions, and it's elusive that the only thing in the Geneva, the third Geneva Convention that applies a non-international armed conflict is Article III. The Mixed Medical Commission is not contained in Article III, and therefore it doesn't apply to him. Well, that, Article III is a floor, right? The United States certainly would have authority to go beyond it. As a discretion. If it went beyond it, that would be a conflict or discrepancy. As a discretionary matter, I suppose it would be possible, but in order for Mr. Aboulouchi to prevail, he has to show that it is required under domestic law that he be able to convene a Mixed Medical Commission. And there are places where the United States has overtly said, we are going beyond that floor. The Law of War Manual lists two specific examples. One is the fact that Guantanamo detainees have habeas rights, and the other is it gives a very narrow example during the Vietnam War of certain privileges accorded to guerrilla groups that were not engaged in terrorism. So your honor is right that it is possible to go beyond that, but whether the government and its discretion chooses to go beyond that is not sufficient for Mr. Aboulouchi to prevail. He has to show that it's required under domestic law that the government convene the Mixed Medical Commission, and he can't show that. That portion of the Law of War Manual does, it references some administrative process at Guantanamo Bay. Can you explain? I'm not quite sure which part you're referring to. I think the part that we... Petitioner is citing about, it's in footnote 544, maybe. Sorry, I don't have the full manual. It's pretty heavy. No, I'm certain you don't. But I think the clearest statement is, if you go to 4.19.3.1, it says, unprivileged belligerents are not entitled to the privileges of POW status, prisoner of war status. And we think that is about as clear as you can get. Say it again. Yeah, this is, and we cite this on pages 31 to 32 of our brief. Law of War Manual says at 4.19.3.1, unprivileged belligerents are not entitled to the privileges of prisoner of war status. In the very next section, 4.19.3.2, it says, during international armed conflict, in cases of doubt as to whether a person held as an unprivileged belligerent is in fact a POW, or entitled to POW treatment, that person should enjoy POW protections until their status is assessed by his competent tribunal. So it's telling you two things. It's telling you, one, if you're an unprivileged belligerent, you don't get any of the things that you would get from either being a POW or being treated as a POW. And two, it's saying in international armed conflict, which this is not, you do get some sort of provisional status until you have a competent tribunal determining that you're not entitled to it. And it accords with your view that the 190-8 other, you know, the other detainees category tracks that in the sense that unless, until you've been, it's been determined whether you're an enemy prisoner of war or retained personnel or civilian internee, you're treated as if you're a prisoner of war. But once it's been determined that you're something that is in contradistinction to a prisoner of war, then you no longer get that residual treatment. I mean, that is one of our arguments. Absolutely. Again, I think we think as I explained to Judge Garcia, I think another way you could get there is you don't even need to get to 190-8 at all because this is a non-international armed conflict. But if you want to kind of assume that 190-8 might apply anyway, and under the clear terms of that other detainee language, whatever provisional status you might have gotten initially, you don't get it once you have a status determination and we have that here. On the broader argument that 190-8 just doesn't apply to non-international armed conflict, I think petitioners suggest that that means there's no regulation out there that governs sort of Article III detainees from non-international armed conflicts. Could imagine a few responses, but I'd like to hear yours. Sure. Well, one thing is that within the Department of Defense, there are various sources of law. Army regulations are one potential source of law. DOD instructions are another source of law. There are DOD instructions that govern aspects of detainee operations at Guantanamo Bay. Including the DOD directive that's in the briefs here. Correct. We've established all-encompassing standards.  That's exactly right. There's a DOD directive that we cite about treatment of detainees. There's also DOD directives about healthcare, and we've cited those in our brief, and they reaffirm that the individuals at Guantanamo are entitled to healthcare, and the government acknowledges that. So I don't think it's- I understand the argument. You're not saying there's anything affirmative in 198 that we could look at and say, that says it doesn't apply in non-international armed conflict. It's more of the baseline is non-international armed conflict. Detainees do not get access to these kinds of rights. You'd expect to see something clearer in 198 if it was departing from that? So I think the argument is 190-8 at the very beginning says that anything about 190-8 that's inconsistent with the Geneva Conventions, the Geneva Conventions take precedence. And because the Geneva Conventions are clear that in non-international armed conflicts, the only part of the Third Geneva Convention that is applicable is Article III, and not any of the other stuff, that that's the part of 198, 190-8 that you would look to to know that we're not talking about non-international armed conflict. But it's really in conflict. I mean, if the United States wanted to apply that to non-international armed, detainees in non-international armed conflicts, nothing in the Geneva Convention would look at that. Well, respectfully, it's not just a conflict. It actually, if you look at the language in 1-1, it's actually, it's broader than that. It says any event of conflicts or discrepancies. So I think the preface to 190-8 is really telling you, we're not just trying to say like, don't conflict with the Geneva Convention. We're trying to really implement it here, and you got to read what we're doing here in light of that. Be happy to address any remaining questions that the court has. Otherwise, we would ask the court to affirm, or rather dismiss for lack of jurisdiction, otherwise. Yeah, I'm just seeing if there's anything else to ask. All right. Thank you. So I believe that Ms. Pratt-Ann used all her time, but we'll give you a few minutes for rebuttal, if you'd like it. You don't have to take it. I would, Your Honor. I do just want to note that I did reserve one minute, but that's neither here nor there. So I don't want to let the government's misstatement of the DOD Law Reform Manual go by, because this is extraordinarily important, because it provides the bookend for the government's continuing employment of AR-190-8 when it is convenient to them. And so I'm not sure what my learned colleague was looking at, but at section 427.4 of the DOD Law Reform Manual, it states, it does acknowledge that Article 5 of the Third Geneva Convention addresses entitlement to POW status. And then it says, DOD practice has been to use Article 5 tribunals or similar administrative tribunals to address these issues. For example, DOD used administrative tribunals to address a variety of issues during detention operations in Vietnam, Panama, the Persian Gulf in 1991, Iraq in 2003, Afghanistan, and Guantanamo, which we all acknowledge is a non-international armed conflict. This is, again, in keeping with the government's longstanding position. Can you say again what you're reading from? Certainly, Your Honor. It's the DOD Law Reform Manual, which is called by both the government and the Secretary of the Army as the DOD's authoritative statement on the law of war, and it is Section 4.27.4, entitled Tribunals to Assess Other Detainee Issues. And footnote 538. Not in your supplement, not in your addendum. It's cited in our reply brief, Your Honor, and it does say that at footnote 538, it cites, interestingly, it doesn't say Army Regulation 190-8. It says 1997 Multi-Service Detention Regulation, which is perhaps a more accurate description of what the regulation actually is. And this is not, this is an extremely authoritative statement. The Secretary of the Army cites the Law Reform Manual as higher-level guidance for interpretation of application of AR-190-8, even in the memorandum where he strips detainees of the protections of AR-190-8. The government acknowledges the supremacy of the DOD Law Reform Manual's statements on how the United States implements the Geneva Conventions at Guantanamo, specifically citing Guantanamo. So I'm looking at this provision of the Law Reform Manual, and it says, after saying Article 5 addresses entitlement to POW status, it says administrative process may be appropriate to address status questions besides entitlement to POW status. And I suppose the government might say, this is just explaining other ways that we have used similar-looking administrative processes, but we're not agreeing that those were determining POW status, which is what you would need to be the case. Well, yes and no. And the fact that they are citing AR-190-8, which they claim implements only international armed conflict concepts for this proposition, incorporates by reference that regulation to the following sentence where they say, for example, DOD uses such administrative tribunals to address detainee issues in, for example, Guantanamo Bay. So this is the current position of the Department of Defense, whereas government agents are here arguing because Mr. Al-Qahtani and Mr. Al-Baluchi asked for their rights under the same regulation are now saying, well, no, no, no, this regulation is not applicable in non-international armed conflict, reading, citing absolutely no language from the regulation that says that. Now, with regards to status, it is, I do just want to note briefly that while we acknowledge that the government's view of Mr. Al-Baluchi is that he is an AUAB, our position is actually that he does not currently have a valid status determination. And this is in our briefs as well, that the CSIRT determined that he was an AUAB and we appealed that determination and the government dropped that appeal. So there's no final status determination for Mr. Al-Baluchi and which differs again from the Qahtani case where there was a final status determination. He accepted the designation of enemy combat. I don't understand how the government dropping an appeal, the determination, you were the one challenging the determination. Yes, Your Honor. So I don't understand how you're saying that that determination is not valid because the government dropped the appeal. You were the one challenging the determination. Yes, Your Honor. And it is, so it goes to the fact that our position is that Mr. Al-Baluchi still does not have a valid status determination. And so it's simply one more factor on the scales of first, even if he did have a determination of AUAB or enemy combatant, as I said earlier, that would still place him in the other detainee category under AR-190-8, because as this court said in AMR-2, that designation does not render AR-190-8 inapplicable to these particular detainees. I guess I'm just confused about your position. I mean, if you're saying that his determination by the combatant status review tribunal is invalid, then wouldn't that be grounds for his release? Well, he is still being detained under the AUMF or various detention authorities, but it's, so yes, certainly we could argue that, but for the purpose of this litigation, what we're saying is first, if he is an AUAB, as the government has stated, he falls in the other detainee category as Judge Collier reasoned below. But the fact that we have challenged that status, the fact that we don't believe that that status determination is final, places him even more into the other detainee category through which he should benefit from prisoner of war protections under AR-190-8. Can I ask, and this goes to the question of appellate jurisdiction in determining whether your client's claim for entitlement to a mixed military commission, whether it's separate from the merits of the habeas claims in the underlying action, what are the arguments in the state habeas petition? So his habeas proceedings have been stayed since 2019, pending the outcome of military commission proceedings. And so the only reason that the habeas, that the state would be lifted is for issues that sound in habeas that cannot be addressed by the military commission or will not be addressed by the military commissions. And so Judge Friedman and other district judges have found that the requests for mixed medical commissions do sound in habeas. And so they do have jurisdiction over those issues. Now- So I guess what I'm asking is one of the questions, if we're looking at collateral order review, which is distinct from your argument under Carson, this has a practical effect of an injunction, but under the Cohen versus beneficial loan, the notion that this is, you're entitled to interlocutory appeal because this is a collateral order, we would have to determine that the claim of entitlement to a mixed military commission is separate from the merits. And it sounds like it's not, it sounds like it's part of the underlying habeas. No, Your Honor. And so under the collateral order doctrine, we believe that we fulfill all three conditions. First, this conclusively denied Mr. Albulucci's right to a mixed medical commission. Second, it resolved his ability, or it seems purported to resolve his ability to access the mixed medical commission for evaluation, which is entirely separate from his habeas challenge. Now the government- Although I thought that it's part of the habeas challenge. Well, it sounds in habeas. And this is part, one of the ways in which Guantanamo is a little bit of a different animal because of the conditions of confinement litigation falling under habeas for this purpose. But it is not, the merits of habeas are not coextensive with the merits of determining whether or not he has a right to a mixed medical commission. Now that right has been cut off by the district court for now. And his habeas petition, meanwhile, remains pending. Now the problem is, and this is what makes it unreviewable, is that we're looking at, it is no exaggeration to say years, if not decades before that habeas petition can be returned to. I'll give you some numbers. We are scheduled for pretrial hearings at the military commission through the end of 2025. All parties agree that a trial date once set, if set, will take a minimum of a year and a half. So that is an absolute minimum of two and a half years before there is any verdict in the military commission proceedings. If it's a capital trial- Right, I was only asking about the separate from- Certain merits, certainly. So that's our position on the collateral order doctrine. The very last point, very briefly, that I would just make is with regards to the government's position on whether this could be released. And I believe my learned opponent said that I'm not sure where she's getting the other possible outcomes of the Mixed Medical Commission from. And that's from practice. The Mixed Medical Commissions that have been convened, both post-World War II and the ones that are actually being proposed right now with the support of the United States in Ukraine are clear that the physicians of the Mixed Medical Commission can find that certain treatment or certain conditions may be necessary. And I want to just bring this back quickly to what the real point of this is for Mr. Al-Baluchi. At the heart of this is his need for healthcare, for his need for a medical evaluation. And I think the independent expert reports make that very, very clear. That's what we're talking about here. He has not been able to have an evaluation. All right, all right, you can wrap up. All right. All I want to say on that, Your Honors, is just that really the agony of having this right revoked at a time when he thought it would be possible to compel the government to at least order the evaluation cannot be overstated. All right. Thank you. The case is submitted.
judges: Pillard; Wilkins; Garcia